**UNITED STATES of America, Plaintiff,**

v.

**James Hurley BISHOP, alias James B. Kelly, Frank Robert Verville, alias Frank Edwards, Robert L. Halpin, alias Robert Gunther, Jacob Louis Shubow, Irving Isadore Lichterman, and Daniel Edward Wigodski, Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**Eugene Philip GILLIS, Defendant.**

**Nos. 59-CR-52, 59-CR-139.**

United States District Court
E. D. Wisconsin.

Dec. 6, 1960.

spiracy in connection therewith in violation of Sections 2314, 2315, and 371 of Title 18 U.S.C.A.

On the jury trial of these cases which had been consolidated for said purpose, commencing on April 28, 1960, three other defendants therein, James Hurley Bishop, Frank Robert Verville, and Robert L. Halpin, were the main witnesses for the United States of America. Previously, on June 3, 1959, Bishop and Verville entered a plea of guilty to Count I—mail fraud—and Halpin entered a plea of guilty to Count XXI—conspiracy —of the multiple count indictment in Case No. 59–CR–52 in which each of these defendants was charged in a number of additional counts. The plea was accepted by the court, and the United States moved that the remaining counts against these defendants be held in abeyance until final disposition of the case. On the proceeding on June 3, 1959, the United States also moved that the case against Ruth Jane McGuigan, another defendant under the indictment in Case No. 59–CR–52, be held in abeyance until further disposition of the matter.

Subsequent to the trial and conviction of the moving defendants and the sentencing of all defendants except Ruth Jane McGuigan against whom the charges had been dismissed, Bishop, Verville, and Halpin recanted their prior statements to the court on entering pleas of guilty and their testimony on the trial respecting any agreements with a representative of the United States as to their pleading guilty to one count and cooperating with the government on the trial of the other defendants in these cases.

In September, 1960, Verville and Halpin moved for reduction of sentence and withdrawal and vacation of their pleas of guilty. They contended that there had been a confidential agreement on their behalf with the Assistant United States Attorney then in charge of the case that they would receive leniency in sentencing for the plea of guilty and for their cooperation and testimony on the trial. On the disputed evidence on these motions by Verville and Halpin, the court

Edward G. Minor, U. S. Atty., by Matthew M. Corry, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Julius Lucius Echeles, Chicago, Ill., for defendants Jacob Louis Shubow and Eugene Philip Gillis.

Adrian B. Fink, Jr., Cleveland, Ohio, and John H. Wessel, Milwaukee, Wis., for defendants Irving Isadore Lichterman and Daniel Edward Wigodski.

GRUBB, District Judge.

These cases are before the court on the motions of the defendants, Irving Isadore Lichterman, Daniel Edward Wigodski, Jacob Louis Shubow, and Eugene Philip Gillis, for a new trial on the ground of newly discovered evidence.

The moving defendants were convicted of transporting and receiving stolen goods in interstate commerce and con-

found that no promises or representations as to sentence had been made to these defendants. The motions were denied. The court further found that there was an agreement that the Assistant United States Attorney would move to dismiss all other counts if said defendants entered pleas of guilty to one count, and that such an agreement did not constitute a promise of leniency or representation as to sentence.

Evidence admitted on these motions, in the form of affidavits and testimony, has been incorporated into the record of the instant proceedings on stipulation of the parties.

The moving defendants contend on the motions for a new trial that newly discovered evidence discloses that the three witnesses for the United States on the trial—Bishop, Verville, and Halpin—testified falsely on the trial in responding in the negative to questions whether or not any promises or understandings had been entered into by each of said witnesses with any government agent or counsel with respect to their testimony and pleas of guilty in the case. They further contend that the prosecuting attorney knew that this testimony was false and that he did not correct or change the same.

From the undisputed evidence before the court on this matter, it appears as follows:

1. Prior to the entry of a plea of guilty by defendants Bishop, Verville, and Halpin on June 3, 1959, conferences took place between said defendants' attorneys and the Assistant United States Attorney then in charge of the case.

2. An understanding was reached between these parties prior to the entry of the pleas of guilty, which said United States Attorney subsequently characterized as an "offer" by the government, as an "understanding," or as a "promise," although he testified that he would not necessarily consider it a "promise." This understanding is best set forth in a letter by the Assistant United States Attorney, written on June 8, 1959, to the Department of Justice in reference to Case No. 59–CR–52, which letter reads, as far as pertinent, as follows:

"The case was scheduled for hearing on motions on June 3, 1959. Defendants Lichterman and Wigodski of Cleveland moved for a separate trial. Defendant Shubow of Detroit also moved for a separate trial, for change of venue, and numerous other motions to dismiss, for production of documents, etc. During the recess at the hearing, defendants Bishop, Verville, and Halpin offered to plead guilty to one count of the indictment and stated that they would cooperate with the government and testify at the trial. We seized this opportunity, because a full-scale trial in this case without their testimony would conceivably take weeks if not months. Furthermore, without their testimony, a conviction of the remaining defendants who purchased the merchandise, and who are the ones who actually profited from the scheme would be extremely difficult.

"The defendants Bishop and Verville entered a plea of guilty to count I—mail fraud—and Halpin entered a plea of guilty to Count XXI—conspiracy. The plea was accepted by the court, and a presentence investigation was ordered. We moved to hold the remaining counts in abeyance until final disposition of the case, but it is understood that if the defendants cooperate fully with the government and testify at the trial, we will move to dismiss the remaining counts of the indictment before final disposition of the case.

"We also recommend dismissal of the indictment as to Ruth McGuigan. She became involved only because she was associated with one of the defendants, and we do not feel that she was an active participant in the conspiracy. She also stated that she will testify for the government at the trial if she is called as a witness."

A copy of this letter was in the files of the United States Attorney for the Eastern District of Wisconsin.

3. Defendants Bishop, Verville, and Halpin testified on the trial that there were no arrangements or that they did not know of any arrangements with a representative of the government respecting their pleas of guilty to one count of the indictment.

4. This testimony by defendants Bishop, Verville, and Halpin is false.

5. The falsity of this testimony was not corrected or pointed out to the jury.

In light of these undisputed facts, the motions for a new trial must be granted. The issue here is whether or not the jury was fully and correctly apprised as to the facts bearing on the credibility, the possible intentions, and the motives in testifying of these witness-defendants. Evidence adduced since the trial establishes that the witnesses gave perjurious testimony on this question. The prosecuting attorney, who knew or should have known the true state of facts, did not correct the false testimony. Attempts by one counsel for the defendants to elicit information on this point were unsuccessful. Final arguments to the jury, by this same counsel who may have inferred that the pleas of guilty to one count only were predicated on an understanding between these witnesses and the government and who attempted in his argument to convey to the jury the possible import of such an understanding, could not serve to controvert the testimony of these witnesses or to apprise the jury of the correct facts of the matter.

The moving defendants have the right to have the facts concerning the agreement between the witness-defendants and the government considered by the jury on the question of the credibility of these witnesses. Under this agreement, the witnesses were offered consideration for their cooperation and testimony in the form of a promise of recommendation of dismissal of the remaining counts which would limit the maximum sentence for which they might be liable,

and in the form of a promise of a recommendation of dismissal of the case against the girl friend of one of the witnesses.

A conviction obtained by knowing use of false testimony bearing upon the credibility of the witnesses must fall on constitutional grounds. Napue v. People of State of Illinois, 1959, 360 U. S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. In the Napue case, the Supreme Court set aside a state court conviction where it was shown that a principal witness testified falsely that he had been promised no consideration for his testimony and subsequently discovered evidence revealed that an Assistant State's Attorney had in fact promised him consideration for testifying but did nothing on the trial to correct the witness's false testimony on this question. The court states in the Napue case at page 269 of 360 U.S., at page 1177 of 79 S.Ct.:

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. * * *"

This case may not be distinguished on the ground that the promise there was one of recommendation for a reduction of sentence, whereas here the promise was for a recommendation of dismissal of counts of the indictment. In either instance, the cooperation of the witness and his testimony on the trial are predicated upon or offered on the understanding that consideration will be shown for such cooperation by the witness. The determination of the effect of such consideration as a motive for testifying is for the jury, and this court cannot substitute its judg-

ment as to this effect. Only the jury can determine what conclusions it would have reached on the facts as now established as to the agreements bearing on the pleas of guilty and the testimony of the witness-defendants. Mesarosh v. United States, 1956, 352 U.S. 1, 77 S. Ct. 1, 1 L.Ed.2d 1.

The evidence corroborating the charges of the moving defendants was discovered after sentences had been imposed on these defendants. They moved promptly for a new trial and submitted proof as to this evidence which was newly discovered as far as the defendants' case was concerned.

For the foregoing reasons, the motions for a new trial must be and are hereby granted.